UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| LYNCE P. FOSTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos.  2:09-CR-5-JRG-1 |
| | ) | 2:15-CV-227-JRG |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner's supplemented pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 184 (original petition); Doc. 188 (supplement); Doc. 196 (amendment)]. The United States responded in opposition to the original § 2255 motion on September 24, 2015, [Doc. 186], and the supplement on June 30, 2016, [Doc. 191]. Petitioner replied to both of those responses [Docs. 187, 192]. For the reasons discussed below, Petitioner's supplemented § 2255 motion will be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.  **BACKGROUND**

Between January 2005 and March 2006, Petitioner led a conspiracy to distribute cocaine in and around Morristown, Tennessee [Presentence Investigation Report (PSR) ¶ 8]. One of the conspiracy's sources of cocaine was Mexican drug dealer Jario Campos [Doc. 150 at. 150].

On January 29, 2006, Petitioner—armed with a semi-automatic pistol—and five of his co-conspirators kidnapped and robbed Campos [Doc. 149 at 10–11, 24–26]. Petitioner personally took nine ounces of cocaine from Campos and beat Campos until he revealed the location of his stash house [*Id.* at 25–27, 53–54; Doc. 150 at 155–156; PSR ¶ 9]. He then

ordered co-conspirator Buddy Treece to retrieve any drugs and money stored at the stash house [Doc. 149 at 27–32].

Later that evening, Treece provided Petitioner with one kilogram of cocaine and two pounds of marijuana recovered from Campos's stash house [*Id.* at 32–33; PSR ¶ 9], but did not give Petitioner any of the drug money that he had found [PSR ¶ 9].

Petitioner suspected that Treece had withheld money and, a few days later, went to Treece's trailer to confront him [Doc. 149 at 33–36; Doc. 150 at 45]. Petitioner pulled out a semi-automatic pistol, fired it at Treece, and demanded that he give Petitioner any money found in the stash house [Doc. 149 at 34–35, 55; Doc. 150 at 45–46]. When Treece continued to pretend that he had not found any money, Petitioner ordered other co-conspirators to physically assault and rape Treece's girlfriend, Brittany Sopshire [Doc. 140 at 13–17; Doc. 149 at 35–36, 62, 129–130; Doc. 150 at 6–7].

Petitioner forced Sopshire to drive him to Nashville, Tennessee, where he distributed some of the cocaine stolen from Campos [Doc. 149 at 106–107, 131; Doc. 150 at 7–8, 49–50]. After releasing Sopshire, Petitioner obtained a truck of his own and returned to Morristown to distribute more cocaine and to collect the money from Treece [Doc. 149 at 104–110; Doc. 150 at 51–54].

On February 5, 2006, while Petitioner was driving around Morristown, a police car pulled up behind his truck [Doc. 150 at 54–55]. Afraid that the police car would pull him over, Petitioner abandoned the truck, leaving behind a semi-automatic pistol and over two hundred grams of the cocaine that he had stolen from Campos [*Id.*; Doc. 149 at 128–129]. Police subsequently discovered both items inside Petitioner's abandoned truck [Doc. 150 at 107–109].

2

Officers charged Petitioner with three offenses occurring on or around February 5, 2006: possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); possession of a firearm in furtherance of that drug trafficking offense, in violation of 18 U.S.C. § 924(c); and possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) [Doc. 1]. After learning about the armed robbery of Campos, the grand jury issued two superseding indictments which added a 21 U.S.C. § 841(b)(1)(C) cocaine possession charge and corresponding 18 U.S.C. § 924(c) charge for the January 29, 2006 incident and a 21 U.S.C. § 841(b)(1)(B) cocaine conspiracy charge for the entire timeframe of the conspiracy [Doc. 42 (first superseding indictment); Doc. 83 (second superseding indictment)].

Despite multiple plea offers, Petitioner consistently refused to accept responsibility; instead, he insisted on proceeding to trial and was convicted as charged in the second superseding indictment [Doc. 113]. He faced statutory penalty ranges of five to forty years' imprisonment for the two drug offenses, up to ten years' imprisonment for the § 924(c) offense, and twenty-five years up to life imprisonment for the second § 924(c) offense [PSR ¶ 86]. Based on two prior Tennessee convictions for aggravated robbery, [*Id.* ¶¶ 48, 49], and one prior Tennessee drug conviction, [*Id.* ¶ 53], the United States Probation Office deemed Petitioner to be a career offender under Section 4B1.1 of the United States Sentencing Guidelines [*Id.* ¶ 37]. This Court imposed an aggregate sentence of 662 months: concurrent terms of 262 months' imprisonment on the drug conspiracy charge and January 29, 2006 drug possession charge and 120 months' imprisonment on the February 5, 2006 drug possession charge and § 922(g) charge, followed by consecutive terms of 60 and 300 months' imprisonment, respectively, for the two § 924(c) charges [Doc. 155].

Petitioner appealed, and the Sixth Circuit found that two of his convictions—those for the February 5, 2006 drug possession offense and the February 5, 2006 § 924(c) offense—should be vacated on double jeopardy grounds because Petitioner had only committed one continuous possession with intent to distribute offense and one § 924(c) offense in connection with the same. *United States v. Foster*, 765 F.3d 610, 613 (6th Cir. 2014). Accordingly, the Sixth Circuit vacated those convictions and the sentences associated therewith and remanded the case for this Court to issue an amended judgment. *Id.* at 615. On December 9, 2014, this Court amended the judgment and imposed a new aggregate sentence of 322 months: concurrent terms of 262 months' imprisonment on the drug conspiracy charge and January 29, 2006 drug possession charge and 120 months' imprisonment on the § 922(g) charge, followed by a consecutive term of 60 months' imprisonment for the remaining § 924(c) charge [Doc. 182 (amended judgment)].

On June 26, 2015, the Supreme Court held that the residual provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague in *Johnson v. United States*, 135 S. Ct. 2551 (2015). On August 24, 2015, Petitioner filed a timely petition with eight grounds for collateral relief, none of which mentioned *Johnson* [Doc. 184]. Nine months later and less than one year after the Supreme Court decided *Johnson*—on May 16, 2016, Petitioner filed a timely supplement challenging his career offender status in light of that decision [Doc. 188]. He recently filed an amendment citing *Mathis v. United States*, 136 S. Ct. 2243 (2016) [Doc. 196].[1]

---

[1] In *Mathis*, the United States Supreme Court held that: (1) a prior conviction does not qualify as a generic form of a predicate violent felony for purposes of the ACCA if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former; and (2) Iowa's burglary statute—which defines "structure" to include any building, structure, [or] land, water, or air vehicle"—had a broader locational component than generic burglary. 136 S. Ct. at 2247–48,

## II. SUPPLEMENTED PETITION FOR COLLATERAL RELIEF

### A. Standard of Review

To obtain relief under 28 U.S.C. § 2255, Petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

### B. Analysis

As supplemented, the petition contains nine grounds for relief: the first three involve allegations of court error and the last six involve allegations of ineffective assistance. With regard to the former, Petitioner claims that: the admission of testimony concerning Campos's statements to law enforcement officials violated his rights under the Sixth Amendment Confrontation Clause (Ground One) [Doc. 184 at 7 (claiming that Campos was not available for his lawyer to question)]; the proof at trial varied impermissibly from the original indictment (Ground Two) [*Id.* at 8 (challenging proof of, and testimony about, the January 29, 2006 robbery when that offense was omitted from original charging documents)]; and *Johnson* invalidated the identically-worded Guidelines residual clause, his convictions for aggravated robbery only qualified as crimes of violence under that provision, and he now lacks sufficient predicates for

---

53–54. Because the "structure" element of Iowa's burglary statute was broader than the parallel element of generic burglary, the Court concluded that the petitioner's prior convictions were incapable of supporting enhancement under the enumerated-offense clause. *Id.* at 2257.

career offender enhancement (Ground Three) [Doc. 188]. In addition to *Johnson*, he cites *Mathis* as support that his robbery conviction is no longer a crime of violence [Doc. 196]. With regard to the latter, Petitioner claims that counsel rendered ineffective assistance by: not communicating Petitioner's alleged acceptance of a plea offer to the United States (Ground Four) [Doc. 184 at 4 ("Lawyer James J. Lonon failed to inform the government [that] I wanted to accept their plea before the deadline.")]; opening the door at trial for the United States to show pictures of gang tattoos (Ground Five) [*Id.* at 5 ("Lawyer Donald Spurrell opened [the] door for [the] government about gangs then agreed it was okay for [the] government to show pictures of gang tattoos.")]; not objecting to testimony about statements Campos made to law enforcement officers (Ground Six) [*Id.* ("No objection to testimony from officers about Campos statement concerning robbery."); not raising a double jeopardy challenge to the superseding indictments at trial (Ground Seven) [*Id.* (claiming that he was "charg[ed] . . . with the same drugs twice")]; not presenting an opening statement at trial (Ground Eight) [*Id.* at 6]; and pressuring Petitioner to testify at trial (Ground Nine) [*Id.*].

### 1. Grounds One, Two, and Three: Error by the Court

As an initial matter, Petitioner procedurally defaulted Grounds One and Two because he could have raised them on direct appeal, but did not. *See United States v. Calderon*, 194 F.3d 1314 (6th Cir. 1999) (noting that "direct appeal would have been the correct form in which to raise sentencing questions"); *Turner v. United States*, 191 F.3d 453 (6th Cir. 1999) (explaining that "a motion to vacate under § 2255 does not serve as a substitute for bringing a direct criminal appeal").

"In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either

that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *accord United States v. Frady*, 456 U.S. 152, 167-68 (1982). The "hurdle" that a petitioner faces to excuse procedural default is "intentionally high[,] . . . for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Petitioner has not alleged his actual innocence, nor has he put forth any good cause for his failure to challenge his conviction on direct appeal [*See generally* Docs. 184, 187, 188, 192]. Further, even if he were able to establish good cause, he cannot show that an inability to raise the claims would result in prejudice.

i. **Ground One: Confrontation Clause Violation**

Petitioner claims that his right to confront Campos as a witness was violated by this Court's admission of testimony about Campos's statements to law enforcement, but that argument fails because the government only solicited information regarding whether or not Campos made a statement, not the contents of that statement [Doc. 149 at 3–5 (only eliciting testimony that Campos made a statement to police)]. It was defense counsel that solicited information about the content of Campos's statement during his cross-examination of law enforcement witnesses [*Id.* at 9–11; Doc. 140 at 116–118]. To the extent that Petitioner challenges this Court's admission of the testimony solicited by his own attorney, that argument fails because the Confrontation Clause only protects a defendant's right "to be confronted with the witnesses *against* him." U.S. Const. Amend. VI (emphasis added). Because the challenged testimony was not introduced by the government, i.e., introduced "against him," it did not violate the Confrontation Clause.

### ii. Ground Two: Variance Between Evidence and Indictment

Petitioner claims that this Court should not have allowed the government to introduce proof regarding the January 29, 2006 armed robbery of Campos because none of the conduct or offenses related to that event were included in the initial indictment. The claim fails because Petitioner was not tried on the original indictment, but instead on the six charges presented in the second superseding indictment [*Compare* Doc. 1 (original indictment), *with* Doc. 83 (second superseding indictment)]. The latter charged Petitioner with possessing cocaine with intent to distribute on January 29, 2006, and possessing a firearm in furtherance of that crime. Because both of those offenses occurred during Petitioner's armed robbery of Campos, the government's introduction of evidence and testimony regarding the same did not result in an impermissible variance.

### iii. Ground Three: Career Offender Designation After *Johnson*

To the extent that Petitioner argues that *Johnson* invalidated the Guidelines residual clause and that his prior convictions for aggravated robbery cannot be categorized as crimes of violence without that provision, that argument fails because the Guidelines are "not amenable to vagueness challenges." *Beckles v. United States*, 137 S. Ct. 886, 894 (2017). Because *Johnson* did not affect his status as a career offender, that decision cannot serve as a basis for granting relief.

Petitioner is equally mistaken regarding the impact of *Mathis*. Unlike the Iowa statute at issue in that case, Tennessee's aggravated robbery statute does not contain an enumerated list of factual means that makes its definition broader than the generic version of an enumerated offense. Because all methods of committing aggravated robbery in Tennessee qualify as crimes

of violence under the Guidelines use-of-physical-force clause, divisibility of that provision is irrelevant.

### 2. Remaining Grounds for Relief: Ineffective Assistance of Counsel

Five different attorneys represented Petitioner during proceedings at the district court level. Relevant to Petitioner's allegations of ineffective assistance are James Lonon's representation during the pretrial proceedings and Donald Spurrell's representation at trial.

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the court need not decide whether counsel's performance was deficient.

### i. Ground Four: James Lonon

Petitioner claims that he attempted to plead guilty to a single count of violating § 922(g)(1) under the original indictment but was unable to contact his attorney—James Lonon—before the deadline for acceptance passed and issuance of the first superseding indictment. He faults counsel for being unavailable and not communicating his desire to plead to the United States. As support of his account of events, Petitioner references a pro se letter that this Court received on September 11, 2009—three days after the plea deadline lapsed on September 8, 2009 [Doc. 45]. In response, the United States submitted an affidavit by Lonon disputing Petitioner's account of events [Doc. 186-1]. Together, this affidavit and Petitioner's 2009 letter foreclose the requested relief.

In the affidavit, Lonon claims that Petitioner received two plea offers during the course of his representation: one offer under the original indictment and a second substantively similar offer under the first superseding indictment [*Id.* at 1–2 (characterizing differences between the original and revised plea offer as mostly technical changes)]. He claims that both proposed pleas required that Petitioner plead guilty to the drug charge but not the gun charge and that Petitioner rejected both offers in favor of proceeding to trial [*Id.* at 2]. This Court finds that it need not determine whether Petitioner ever actually attempted to accept the first plea offer or whether that agreement allowed him to plead guilty to a single gun charge because, even if the Court were to accept Petitioner's account of events, he would not be entitled to collateral relief.

To demonstrate prejudice based on ineffectiveness in plea negotiations "a [petitioner] must show that but for the ineffective [conduct] of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence,

or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 132 S. C. 1376, 1385 (2012). Here, Petitioner admits that he learned after his unsuccessful plea attempt that the United States would never have agreed to that lapsed offer because the prosecutor "never approved the first plea with his boss" [Doc. 45 at 1 (suggesting that the revised plea required that Petitioner plead guilty to the drug, not gun, offense)]. Because his own admissions foreclose any possibility that the unaccepted plea would have made it to this Court or resulted in a plea agreement along the terms alleged, Petitioner has not demonstrated that he incurred prejudice as a result of Lonon's alleged conduct or is entitled to relief based on the same. *See, e.g.*, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence." (internal quotations and citation omitted)).

### ii. Grounds Five, Six, Seven, Eight, and Nine: Donald Spurrell

Petitioner faults trial counsel—Donald Spurrell—for: "open[ing] [the] door . . . for the government to show pictures of gang tattoos" during Treece's testimony, not "object[ing] to testimony from officers about Campos's statement concerning robbery," not objecting to Petitioner's inability to cross-examine Campos, "[n]ot challenging the superseding indictment [on] Double Jeopardy" grounds, "[n]ot preparing a defense," not presenting opening statements, and having petitioner testify at trial [Doc. 184 at 5–6]. None of these claims justify collateral relief.

Petitioner's assertion that Spurrell did not prepare a defense is too underdeveloped for this Court to review and must be dismissed on that basis. *See United States v. Roach*, 502 F.3d 425, 442 (6th Cir. 2007) (deeming undeveloped claims unreviewable); *O'Malley v. United*

11

*States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of veracity, are not sufficient to warrant a hearing."); s*ee also Hall v. United States*, No. 3:05-cr-36-TAV, 2015 WL 3994834, at *4 (E.D. Tenn. July 1, 2015) ("Petitioner has the burden to establish that he is entitled to relief. . . . The Court cannot evaluate a claim that consists of little more than a single conclusory sentence. The claim must be rejected because it has not been adequately developed, and therefore, is not reviewable.").

The record contradicts Petitioner's suggestion that Spurrell improperly pressured him into testifying at trial. "Solemn declarations in open court carry a strong presumption of verity" and justify summary dismissal of any challenge based on conclusory assertions or contentions incredible on the face of the record. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Prior to his testimony, this Court reminded Petitioner that he had to make "[t]he decision whether to testify" and emphasized that the decision was "personal to" him and could not "be made by anybody else" [Doc. 145 at 15]. This Court noted that "Spurrell [could not] make the decision for [Petitioner] whether to testify or not. . . . [and] [Petitioner would] have to make [that decision] [him]self" [*Id.* at 16]. After making these statements, this Court asked Petitioner whether he was making the decision to testify on his own and without coercion from anyone [*Id.*]. He responded that the decision was his own and that he was freely making it [*Id.*]. Petitioner has not provided, and this Court is unaware of, any reason to doubt the veracity of these prior sworn statements.

The record also forecloses collateral relief based on counsel's failure to challenge the second superseding indictment as a violation of Double Jeopardy. The Sixth Circuit already vacated Petitioner's convictions and sentence for the duplicitous counts in the superseding

indictment, *Foster*, 765 F.3d at 613, and this Court already amended Petitioner's judgment to reflect those changes. Because this Court already addressed the error, no relief is required.

While it is true that Spurrell did not present an opening statement at trial [Doc. 108], the decision of whether or not to present such as statement is a strategic decision left to the sound discretion of trial counsel. *See, e.g.*, *Lott v. MacLaren*, 569 F. App'x 392, 400–01 (6th Cir. 2014). Here, Petitioner has not provided any reason for this Court to believe that counsel's choice to not include an opening statement fell outside prevailing professional norms or that the addition of an opening statement would have altered the verdict. Again, his claim fails as a matter of law.

Petitioner has not demonstrated that prejudice resulted from Treece's testimony about gangs and tattoos. The testimony may have demonstrated that Petitioner was part of the Crips gang [Doc. 120 at 43], but ample other evidence in the record demonstrated that Petitioner trafficked cocaine and possessed firearms in furtherance of that offense [PSR ¶¶ 7–10 (summarizing trial evidence)]. Because significant unrelated evidence supported his convictions, the testimony about gangs and tattoos could not have affected the verdict or resulted in prejudice.

To the extent that Petitioner argues that counsel should have raised a Confrontation Clause challenge to the testimony about Campos's statements to law enforcement, that argument fails for the same reasons as Ground One. Because the United States did not violate Petitioner's rights under the Confrontation Clause, Petitioner was not prejudiced by the absence of an objection to its direct examination. *See, e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to raise a meritless objection). To the extent that Petitioner suggests that counsel should not have solicited the contents of Campos's statements on cross-examination, the claim fails because the testimony

did not result in prejudice. To the contrary, the United States had already introduced that same information about the robbery of Campos through the testimony of a live witness—Treece [Doc. 120 at 8–15].

IV. **CONCLUSION**

For the reasons discussed, Petitioner's supplemented pro se § 2255 motion, [Docs. 184, 188, 196], will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE